IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANISLAV TROFYMENKO as Independent Administrator of the Estate of IGOR KARLUKOV, deceased,<br><br>    Plaintiffs,<br>v.<br><br>COUNTY OF LAKE, OFFICE OF THE LAKE COUNTY SHERIFF, SHERIFF MARK CURRAN, CHIEF DAVID WATHEN, JOHN DOE LAKE COUNTY SHERIFF OFFICERS AND AND SUPERVISORS, JOHN DOE EMPLOYEES, AND WEXFORD HEALTH SOURCES, INC.<br><br>    Defendants. | No. 1: 16-cv-04405<br><br>Honorable: Andrea Wood |

**FIRST AMENDED COMPLAINT AT LAW**

NOW COME the Plaintiff, STANSILAV TROFYMENKO as Independent Administrators of the Estate of IGOR KARLUKOV, deceased, by and through their attorneys, O'CONNOR LAW FIRM, LTD., and alleges the following against the COUNTY OF LAKE, OFFICE OFFICE OF THE LAKE COUNTY SHERIFF (hereinafter referred to as "LAKE COUNTY SHERIFF"), SHERIFF MARK CURRAN, CHIEF DAVID WATHEN, JOHN DOE LAKE COUNTY SHERIFF OFFICERS AND SUPERVISORS, WEXFORD HEALTH SOURCES, INC. and JOHN DOE EMPLOYEES for the reasons set forth below:

1

**JURISDICTION**

1. The jurisdiction of the court is invoked pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Judicial Code, 28 U.S.C. § 1331, § 1343, and (b); the Constitution of the United States; and this Court's supplementary jurisdiction powers pursuant to 28 U.S.C. § 1367.

**PARTIES**

2. PLAINTIFF STANSILAV TROFYMENKO, as Independent Administrator of the Estate of IGOR KARLUKOV, is a resident of the State of Colorado and of the United States, and has been appointed as Independent Administrator of the Estate of IGOR KARLUKOV by the Circuit Court of Cook County, Illinois. A copy of the Order and Letters of Office are attached hereto as Exhibit 1.

3. PLAINTIFF STANSILAV TROFYMENKO, as Independent Administrator of the Estate of IGOR KARLUKOV, deceased, has standing to bring all Counts and Causes of Action stated herein.

4. Prior to his arrest, IGOR KARLUKOV was a resident of the State of Illinois and the County of Cook.

5. Defendant, LAKE COUNTY, is a governmental entity within the State of Illinois which funds and operates the Lake County Jail and is a necessary party and is ultimately responsible for Judgment or Settlement.

6. Defendant, SHERIFF MARK CURRAN (hereinafter referred to as "CURRAN") was at all times relevant, the duly elected sheriff of Lake County and the chief administrator of the LAKE COUNTY JAIL. At all times relevant, he was acting under color of law and in the course and scope of his employment as the agent, servant

and an official policy maker for the Defendant, LAKE COUNTY on issues relating to care of prisoners in LAKE COUNTY JAIL and the policies, procedures and customs, as well as the acts and omissions, challenged by this suit and as the County's chief law enforcement officer, Defendant CURRAN was the commanding officer of all Lake County sheriff's deputies, correctional officers, and jail employees and he was responsible for their training, supervision and conduct. He is sued in his official and individual capacities.

7. Defendants, LAKE COUNTY/SHERIFF MARK CURRAN are responsible for the establishment and implementation of the policies, procedures, practices, and customs, as well as the acts and omissions charged in this Complaint.

8. Defendant, LAKE COUNTY is also responsible for ensuring that all of its facilities, including the Lake County Jail, are in compliance with federal and state law, department or agency policies, rules and regulations, and related standards of care.

9. The OFFICE OF THE LAKE COUNTY SHERIFF (hereinafter referred to as "LAKE COUNTY SHERIFF") is a duly incorporated municipal corporation in the State of Illinois and at all times relevant, the Defendant, the LAKE COUNTY SHERIFF, owned, operated and maintained the Lake County Jail for purposes of housing inmates and pretrial detainees, and, as such, was acting under the color of State Law.

10. JOHN DOE OFFICERS AND SUPERVISORS were other correctional officers and supervisors at the Lake County Jail during the events complained of and contributed to the death of IGOR KARLUKOV through their actions or omissions. JOHN DOE OFFICERS and SUPERVISORS ARE SUED IN THEIR INDIVIDUAL CAPACITIES. Plaintiff will ask leave of the Court to amend this Complaint to insert

these Defendants' true names and capacity when same have been ascertained and will further ask leave to join said Defendants in these proceedings.

11. WEXFORD HEATLH SOURCES, INC. (hereinafter "WEXFORD"), with its home offices in Pennsylvania, is a Florida corporation, which at all times material to this Complaint had a contract with Lake County Jail to provide medical and mental health care to those detained at Lake County Jail. Defendant, WEXFORD, was responsible for providing all medical services to detainees, including but not limited to assessment of need for services, provision of care and treatment services for all healthcare needs and follow up; and for hiring, training, supervision and conduct of all healthcare providers at the jail. At all times relevant, WEXFORD, by and through its employees and agents, was acting under color of law and its agents and employees were acting in the course and scope of their employment

12. JOHN DOE EMPLOYEES were employees of Lake County through the WEXFORD HEALTH SOURCES, INC. during the events complained of and contributed to the death of IGOR KARLUKOV through their actions or omissions. JOHN DOE EMPLOYEES are sued in their individual capacities. Plaintiff will ask leave of the Court to amend this Complaint to insert these Defendants' true names and capacity when same have been ascertained and will further ask leave to join said Defendants in these proceedings.

**GENERAL ALLEGATIONS and FACTUAL SUMMARY**

13. On February 10, 2014, IGOR KARLUKOV, decedent was arrested by the Mundelein Police Department for home invasion, Domestic Battery, violating an order of protection and aggravated stalking against his ex girlfriend, Norsulu Melnichuk.

4

14. After his arrest, he relayed to Investigator Bush #223 and Investigator Hergott, how he had met Norsulu (aka Consulu) two years ago and the woman that was calling herself Norsulu at this present time was not the same as the one he met two years ago. She was a fortune teller or shaman and had magical powers and that her soul was an old soul but it changes forms and the current soul was a bad soul. He stated that she had taken everything away from him and was taking his soul away. He said that at present time, he had only 35% of his soul left and that he had to stop her from taking his soul completely. He became aware at midnight on 2/10/14 that Norsulu was in the process of stealing his soul.

15. IGOR KARLUKOV continued to talk in circles to investigators and brought up the magical powers he knew Norsulu had. He forced his way into the apartment and as Norsulu began to lose her energy, he brought her down to the floor where he placed his arms around her to transfer his energy into her to get her bad soul out. He indicated to investigators that he must accomplish different tasks to stop her. He had to tell her three things. First that he told her 13 times that he was removing his "Bogdon Son". His Bogdon son was the son Norsulu told him that he had in the heavens. He then told her three times that he was preventing her from stealing his soul. As he was holding her, he reports that she lost her energy and lost her soul. He told her three to five times, "I'm destroying you".

16. IGOR KARLUKOV was stopped in the middle of this "ritual" by Norsulu's roommate. He left the apartment and knew he was doomed because he did not destroy her soul and that in a few days his soul would be gone and he would become a bio-robot.

17. On February 11, 2014, Investigator Bush #223, transported IGOR KARLUKOV to the Lake County Jail for bond court hearing. Karlukov made statements that Norsulu used to be the wife of a god and is a god herself.

18. IGOR KARLUKOV's medical intake was completed by Nurse Leticia. At that time, IGOR KARLUKOV indicated no history of mental illness.

19. On February 12, 2014, IGOR KARLUKOV made statements of being fearful about being in jail. The officers observations were that KARLUKOV's behavior was somewhat strange. At that time, the officer felt it necessary to house him in 3sW for monitoring for the possibility of mental health issues.

20. On February 14, 2014 he was moved to 3sW cell 44.

21. On February 27, 2014, IGOR KARLUKOV reported on an inmate request form that he was depressed.

22. On February 28, 2014, IGOR KARLUKOV reported to Nurse Keller that he was very depressed and a referral was made to the mental health staff.

23. On March 3, 2014, a sick call referred for depression. No mental health complaints but requested to take anti-depressant for one week. He was told it took longer than that to begin working and changed his mind on wanting the anti-depressant.

24. On March 25, 2014, IGOR KARLUKOV's attorney called and stated that he received a call from Mr. Karlukov's family and they said he stated, "If he kills himself, it will prevent the bad spirits from harming him". IGOR KARLUKOV was then put on suicide watch at 2110.

25. On March 26, 2014, SW Katie took Mr. Karlukov off of watch because he told her he had a bad day and was fine now.

26. On March 28, 2014, IGOR KARLUKOV was sent to Vista East and received 5 stitches on his neck and prescription ibuprofen for two weeks. Inmate was placed on "razor restriction" by SW Jen.

27. On April 7, 2014, Dr. Mizuno removed the stitches from his neck.

28. On April 14, 2014 SW Katie found red irritation on IGOR KARLUKOV's neck. Scraps of the torn laundry bag were found in his cell. He was placed on suicide watch by SW Katie at that time.

29. On April 15, 2014, SW Jen B followed up with IGOR KARLUKOV. He denied having the torn up laundry bag even when it was found in his cell and denied hurting himself. He got angry when denied a razor and was kept on suicide watch.

30. On April 16, 2014, SW Katie followed up with IGOR KARLUKOV and he was found to still be angry regarding the razor. Watch was continued and the razor was denied.

31. On April 17, 2014, a Psychiatrist saw IGOR KARLUKOV, he was asked about the cut and other redness on the neck. The doctor recommended referral to the internist for rash on beard area and will recommend discontinued suicide watch after 24 hours.

32. On April 18, 2014 IGOR KARLUKOV, fashioned a piece of metal and the mesh laundry bag to a heating vent and hung himself to death.

**COUNT I**
**VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENT RIGHTS**
**BREACH OF DUTY OF CARE AND DELIBERATE INDIFFERENCE TO**
**SERIOUS MEDICAL NEEDS**
**AGAINST DEFENDANTS COUNTY OF LAKE, OFFICE OF THE LAKE**
**COUNTY SHERIFF, SHERIFF MARK CURRAN, CHIEF DAVID WATHEN**
**AND JOHN DOE LAKE COUNTY SHERIFF OFFICERS**

33. Plaintiff restates and re-alleges by reference paragraphs 1 through 32 as though fully set forth herein as Paragraph 33 of Count I of this complaint.

34. From February 11, 2014, until and including April 18, 2014, and at all times material, the Defendant, the LAKE COUNTY SHERIFF, owned, operated and maintained the Lake County Jail for purposes of housing inmates and pretrial detainees, and, as such, was acting under the color of State Law.

35. From February 11, 2014 until and including April 18, 2014, Plaintiff's decedent, Igor Karlukov was a pretrial detainee in the care, custody and control of the LAKE COUNTY SHERIFF with a high risk of self-destructive behavior including suicide.

36. On February 11, 2014 until and including April 18, 2014, and at all times material, the LAKE COUNTY SHERIFF, SHERIFF MARK CURRAN, CHIEF DAVID WATHEN AND JOHNE DOE LAKE COUNTY SHERIFF OFFICERS, by and through its agents and employees, knew that IGOR KARLUKOV was a pretrial detainee with a high risk of self-destructive behavior, including suicide.

37. On February 11, 2014, IGOR KARLUKOV came under the actual care, custody and control of the defendant, LAKE COUNTY SHERIFF AND LAKE COUNTY JAIL, who therefore became responsible for IGOR KARLUKOV's health, safety and overall welfare.

38. From February 11, 2014 to April 18, 2014, notwithstanding the duties and obligations described above, the defendants, LAKE COUNTY SHERIFF, LAKE COUNTY, SHERIFF MARK CURRAN, CHIEF DAVID WATHEN and JOHN DOE LAKE COUNTY SHERIFF OFFICERS, by and through its agents and employees, committed one or more of the following acts of deliberate and utter indifference

　　a. Allowed to exist or failed to correct or remedy a known hazard and means of suicide in that it failed to correct and remove the mesh laundry bag and metal wiring in IGOR KARLUKOV's cell, despite previous jail suicides and the knowledge that the mesh laundry bag could accommodate and be utilized to cause death by hanging;

　　b. Failed to consistently monitor IGOR KARLUKOV on 15 minute or less checks;

　　c. Failed or intentionally deprived IGOR KARLUKOV housing in a hospital or medical ward when it knew that he needed to be in a closely monitored medical environment;

　　d. Had inadequate policies or procedures in effect to monitor, supervise, or observe inmates or detainees who were suicide risks;

　　e. Had a Policy in effect to house inmates or detainees who were suicide risks in physically and visually isolated cells which directly caused the plaintiff's injuries and death because he was not properly observed by Personnel;

    f.    As a matter of standard operating procedure, employed both directly and by contract, unqualified, poorly trained and incompetent personnel to provide medical and psychological care to inmates and detainees.

39.    As a direct and proximate result of one or more of the foregoing wrongful acts and omissions, Plaintiff's decedent, IGOR KARLUKOV was deprived of rights, privileges and immunities guaranteed by his Eighth and Fourteenth Amendments to the United States Constitution, namely he hung himself in his jail cell on April 18, 2014.

40.    Defendants knew or should have known that decedent, IGOR KARLUKOV, was a suicide risk and failed take the necessary precautions to prevent his suicide. By failing to act in the face of obvious risk. The Defendants failure to take adequate precautions to prevent, IGOR KARLUKOV's suicide was the direct and proximate cause of injury and death to IGOR KARLUKOV.

41.    IGOR KARLUKOV, endured conscious pain and suffering from the time he hung himself until the time of death.

42.    As next of kin, IGOR KARLUKOV's heirs have grief and sorry and have lost and will continue to lose, pecuniary support, consortium, society, companionship as well as the love and affection of their cherished Son and brother.

43.    Plaintiff's decedent leaves behind a Mother, Svetlana Karlukova, father, Leonid Karlukov and a sister, Elena Zavtur in the Ukraine.

44.    Plaintiff is the duly appointed administrator of the estate of IGOR KARLUKOV, deceased and brings this action pursuant to 42 U.S. C. §1983, for the benefit of decedent's mother, father and sister, and/or any other person entitled to claim damages under state or federal law.

WHEREFORE, Plaintiffs demand compensatory damages, jointly and severally, against OFFICE OF THE LAKE COUNTY SHERIFF, SHERIFF MARK CURRAN, LAKE COUNTY JAIL, CHIEF DAVID WATHEN AND JOHN DOE LAKE COUNTY SHERIFF OFFICERS AND SUPERVISORS, and for such other and further relief as this Court deems equitable and just.

## COUNT I I

### BREACH OF DUTY OF CARE AND DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS AGAINST DEFENDANTS WEXFORD HEALTH SOURCES, INC. AND JOHN DOE EMPLOYEES

45. Plaintiff restates and re-alleges by reference paragraphs 1 through 32 as though fully set forth herein as Paragraph 45 of this Count II of this Complaint.

46. At all relevant times, including February 11, 2014 and including April 18, 2014, Defendant WEXFORD HEALTH SOURCES, INC. (hereinafter referred to as "WEXFORD") was engaged in the business, for profit, of providing medical and psychological services to detainees and inmates of the LAKE COUNTY JAIL, including initial and continuing suicide risk evaluations, and specifically had contracted with Lake County or the Lake County Sheriff to provide such services in the confines of the jail proper, and as such was therefore acting at all times under color of State Law.

47. At all times relevant, JOHN DOE EMPLOYEES were agents and employees of WEXFORD.

48. From February 11, 2014 until and including April 18, 2014, Plaintiff's decedent, IGOR KARLUKOV was a pretrial detainee in the care, custody and control of

the LAKE COUNTY JAIL, where he came under the medical and psychological care of the DEFENDANT WEXFORD and its JOHN DOE EMPLOYEES.

49. From February 11, 2014 up to and including April 18, 2014, IGOR KARLUKOV as a high suicide risk, a fact which Defendants, WEXFORD and JOHN DOE EMPLOYEES knew and documented.

50. From February 11, 2014 up to and including April 18, 2014, and at all times material, while plaintiff's decedent, IGOR KARLUKOV was under its care, custody and control, the defendants, JOHN DOE EMPLOYEES, individually and as an employee or agent of WEXFORD, and WEXFORD, were negligent and committed one or more of the following acts of utter indifference and/or conscious disregard:

    a. Failed to use the appropriate standard of Medical care to assess, evaluate and make valid safe recommendations for IGOR KARLUKOV suicide risk.

    b. WEXFORD, Individually had in place policy or procedures which were not calculated to truly determine whether detainees or inmates at the Lake County Jail were at high risk for suicide and specifically IGOR KARLUKOV;

    c. WEXFORD, Individually, did not train its personnel, employees and agents to properly, accurately or adequately be able to make valid and safe recommendations for the proper care and evaluation of inmates and detainees who were suicide risks and specifically, IGOR KARLUKOV;

    d. JOHN DOE EMPLOYEES, Individually allowed to exist or failed to correct or remedy the failures inherent in WEXFORD's policies, procedures and personnel.

    e. JOHN DOE EMPLOYEES, Individually Failed or intentionally deprived IGOR KARLUKOV housing in a hospital or medical ward when it knew he needed to be in a closely monitored medical environment.

    f. JOHN DOE EMPLOYEES, Individually, conveyed to the Sheriff's department that IGOR KARLUKOV would be removed from the suicide watch implemented previously, thereby diminishing the severity of his condition and the level of his suicide risk.

51. As a direct and proximate result of one or more of the foregoing wrongful acts and omissions, Plaintiff's decedent, IGOR KARLUKOV was deprived of rights, privileges and immunities guaranteed by his Eighth and Fourteenth Amendments to the United States Constitution, namely he hung himself in his jail cell on April 18, 2014.

52. Defendants knew or should have known that decedent, IGOR KARLUKOV, was a suicide risk and failed take the necessary precautions to prevent his suicide. By failing to act in the face of obvious risk. The Defendants failure to take adequate precautions to prevent, IGOR KARLUKOV's suicide was the direct and proximate cause of injury and death to IGOR KARLUKOV.

53. IGOR KARLUKOV, endured conscious pain and suffering from the time he hung himself until the time of death.

54. As next of kin, IGOR KARLUKOV's heirs have grief and sorry and have lost and will continue to lose, pecuniary support, consortium, society, companionship as well as the love and affection of their cherished Son and brother.

55. Plaintiff's decedent leaves behind a Mother, Svetlana Karlukova, father, Leonid Karlukov and a sister, Elena Zavtur in the Ukraine.

56. Plaintiff is the duly appointed administrator of the estate of IGOR KARLUKOV, deceased and brings this action pursuant to 42 U.S. C. §1983, for the benefit of decedent's mother, father and sister, and/or any other person entitled to claim damages under state or federal law.

57. An Affidavit of attorney is attached hereto as **Exhibit "A"** and an Certificate of Merit is attached hereto as **Exhibit "B"** which will attest to the reasonable and meritorious cause of action for medical negligence in this matter.

WHEREFORE, Plaintiffs demand compensatory damages, jointly and severally, against WEXFORD and JOHN DOE EMPLOYEES and for such other and further relief as the Court deems equitable and just.

## COUNT III
## 745 ILCS 10/9-102 Indemnification Claim Against the COUNTY OF LAKE

58. Plaintiff adopts and re-alleges paragraphs 1-57 of Counts I and II as paragraph 5 of Count III as though fully set forth herein.

59. In the event that any individual defendant is found liable for their actions performed in the course of their employment, the COUNTY OF LAKE, must indemnify such employee for this verdict pursuant to 745 ILCS 10/2-302.

60. The COUNTY OF LAKE is also responsible for the indemnification of JOHN DOE EMPLOYEES as agents of WEXFORD through the contract with Lake County Jail for Medical services.

WHEREFORE, Plaintiffs demand that the COUNTY OF LAKE, pay any compensatory judgment against individual defendants who acted in the course of their employment.

### Count IV
### Violation of 42. U.S.C. §1983 - Monell claim against Defendant COUNTY OF LAKE, SHERIFF MARK CURRAN and CHIEF DAVID WATHEN

61. Plaintiff adopts and re-alleges paragraphs 1- of Counts I through III as Paragraph 6 of Count IVI as though fully set forth herein.

62. This count is brought pursuant to the 42. U.S.C. §1983 and the Constitution of the United States.

63. Defendants COUNTY OF LAKE, SHERIFF MARK CURRAN and DAVID WATHEN had knowledge of a pattern and practice of the Lake County Jails inadequate precautions to prevent inmate suicide for years but failed to take appropriate action.

64. Defendants, COUNTY OF LAKE, SHERIFF MARK CURRAN and DAVID WATHEN, perpetuated, tolerated and fostered the environment and showed a callous indifference by refusing and failing to take corrective actions and continuing to allow the LAKE COUNTY JAIL to be indifferent to the medical needs of it's inmates and pretrial detainees even after the several deaths from 2006 to 2012 and a call for a review. By allowing this they created a practice, although not written or express municipal policy, so widespread, permanent and settled that it constituted a custom or usage within the LAKE COUNTY JAIL.

65. The policy, practice, custom and/or procedure of Defendants Defendants COUNTY OF LAKE, SHERIFF MARK CURRAN and DAVID WATHEN caused the violation of the PLAINTIFF's Civil rights.

WHEREFORE, PLAINTIFF demands Compensatory damages from Defendants COUNTY OF LAKE, SHERIFF MARK CURRAN and DAVID WATHEN and PLAINTIFFS demand judgment against the COUNTY OF LAKE and further demand , costs and attorney's fees against the COUNTY OF LAKE and any additional relief this Court deems equitable and just.

## JURY DEMAND

PLAINTIFFS demand trial by jury.

                                              Respectfully Submitted,

                                              /s/ Kevin O'Connor
                                              Attorney for Plaintiff

Kevin O'Connor
 O'Connor Law Firm, Ltd.
19 S. LaSalle, Suite 1400
Chicago, IL  60603
Phone:  312-906-7609
Fax:  312-906-7615
KOCONNOR@KOCONNORLAW.COM