**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STANISLAV TROFYMENKO as Independent | ) | |
| Administrator of the Estate of | ) | |
| IGOR KARLUKOV, deceased, | ) | |
| | ) | Case No. 16 CV 04405 |
| Plaintiff, | ) | |
| | ) | Honorable Andrea Wood |
| v. | ) | |
| | ) | |
| COUNTY OF LAKE, Illinois, et al. | ) | JURY TRIAL DEMANDED |
| | ) | |
| | ) | |
| Defendants. | ) | |

**LAKE COUNTY DEFENDANTS' REPLY TO**
**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS**

Defendants SHERIFF MARK CURRAN, DAVID WATHEN, LAKE COUNTY

SHERIFF'S OFFICE, and COUNTY OF LAKE, ("Defendants") by and through their attorneys,

reply to Plaintiff's Response to Lake County Defendants' Motion to Dismiss Counts I, III, and IV

of Plaintiff's Amended Complaint and state:

**INTRODUCTION**

Plaintiff's Response demonstrates: (1) Count I should be dismissed against Sheriff Curran

and Chief Wathen in their individual capacities because Plaintiff fails to plausibly plead either

one of them had actual knowledge or personal responsibility regarding the alleged deprivation of

Igor Karlukov's constitutional rights; (2) Count IV's "policy" claim pursuant to *Monell v. Dept.*

*of Social Svcs. of City of New York*, 436 U.S. 658 (1978) should be dismissed because Plaintiff's

conclusory allegations do not meet *Monell*'s standards; and (3) Count III's claim for

indemnification should be dismissed because there is nothing for Lake County to indemnify.

## LEGAL STANDARDS

Plaintiff's Response does not take issue with Defendants' statement of the standards applicable to a motion to dismiss under Rule 12(b)(6). Plaintiff's Response correctly re-states the appropriate standards, with one exception: Plaintiff wrongly asserts "Under a 12(b)(6) motion such as this, the Court must take the facts as true and assume Plaintiff can prove the allegations. *Thomas*, 588 F.3d 445, 454 (7th Cir. 2009) *quoting Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988)." Response at 8. Neither *Thomas* nor *Cosby* say anything remotely like this, and neither case even involved motions to dismiss or Rule 12(b)(6) standards. Indeed, the pin cites Plaintiff provides directs the reader to this: "there is no clear consensus as to how frequently [] conduct must occur to impose *Monell* liability, except that it must be more than one instance, or even three." *Thomas*, 588 F.3d at 454, *quoting Cosby*, 843 F.2d at 983. Thus, this Court should not "assume" Plaintiff can prove the Complaint's allegations.

Also, Defendants agree with Plaintiff that no "heightened" pleading standard exists for *Monell* claims. However, as Defendants have explained, *Monell* claims like Plaintiff's require plausible factual allegations that are not generic, vague, conclusory, and formulaic. Motion at 7. Further, municipal liability "requires strict adherence to the stringent *Monell* standards, because '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability' (for which a municipality cannot be held liable)." *Wardell v. City of Chicago*, 2001 WL 1345960 at *4 (N.D. Ill., Oct. 31, 2001), *citing Board of Commissioners of Bryan County v. Brown*, 520 U.S. 397, 410 (1997). Thus, this Court should pay particularly close attention to what Plaintiff has, and has not, pleaded with regard to his *Monell* claim.

**ARGUMENT**

I.   **COUNT I AGAINST CURRAN AND WATHEN IN THEIR  INDIVIDUAL
     CAPACITIES SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS
     TO PLAUSIBLY PLEAD THEIR PERSONAL RESPONSIBILITY**

Defendants' Motion demonstrated that Plaintiff failed to meet his obligation to plausibly

plead Curran and Wathen had any personal responsibility for the constitutional violations alleged

by Plaintiff.  *See,* Motion at 4-6.  Plaintiff's arguments to the contrary are unsupported by the

Complaint's allegations and the case law Plaintiff cites.  Thus, Count I should be dismissed.

   A.   **Plaintiff is Unable to Show Sheriff Curran or Chief Wathen Were Personally
        Responsible for any Alleged Deprivation of Plaintiff's Constitutional Rights.**

Plaintiff suggests Defendants argued Plaintiff must allege "personal involvement" and not

"personal responsibility."  Response at 3.  Plaintiff is wrong.  While Defendants' Motion (and the

cited case law) discusses "personal involvement," it specifically does so in the broader context of

"personal responsibility."  For instance, Defendants' "Argument" section begins:  "To be liable

under § 1983, a defendant sued in his individual capacity must be personally responsible for the

deprivation of the constitutional right.  *Miller v. Smith,* 220 F.3d 491, 495 (7th Cir. 2000)."

Motion at 4.  As the Defendants explained, Plaintiff has not plausibly pleaded either the personal

"involvement" or "responsibility" of Curran or Wathen.  Motion at 4-6.

Plaintiff argues that *Miller* actually supports his allegations of personal responsibility, but

he is wrong again.  In *Miller*, the court found plaintiff could proceed with his case because while

he could not identify *which* police officer of the three present used excessive force against him,

any of those officers might be held liable for the constitutional violation if they had a reasonable

opportunity to step forward and prevent a fellow officer from violating plaintiff's rights, but

failed to do so. 220 F.3d at 494-95. In *Miller*, it was undisputed that the named officers were present during the alleged use of force; Plaintiff simply did not know which one was the aggressor, and the court held each officer could be found "responsible" without actually having touched the plaintiff. *Id*. at 495. Here, Plaintiff's reliance on *Miller* that "a defendant's direct participation in the deprivation is not required" (*id.* at 495) is misplaced at best, since in this case Plaintiff has not alleged that Sheriff Curran or Chief Wathen had any meaningful contact with or knowledge of Karlukov that provides a basis for plausibly pleading their personal responsibility.

Plaintiff also relies on paragraphs 6, 7, and 36 of his Complaint to argue "Plaintiff has also plead Defendants Sheriff Curran and Chief Wathen had the requisite personal knowledge of the Plaintiff's serious medical condition and intentionally disregarded the known risk and failed to takes [*sic*] steps to prevent the suicide." Response at 4. These paragraphs do not live up to the hype. Paragraph 6 names Curran as a party and alleges he is the official policymaker on issues relating to the Jail and that he is responsible for Jail employees; Paragraph 7 names Wathen as a party and alleges he is responsible for the establishment of policies. Neither paragraph provides plausible support for Plaintiff's assertion that Curran or Wathen (a) had knowledge of Karlukov, (b) knew Karlukov had a serious medical condition, (c) disregarded risks associated with such knowledge, and/or (d) failed to take steps to prevent Karlukov's suicide. And, while Paragraph 36 alleges Sheriff Curran and Chief Wathen "knew that Igor Karlukov was a pretrial detainee with a high risk of self-destructive behavior, including suicide," Paragraph 36 also broadly alleges Curran's and Wathen's knowledge was only "by and through its agents and employees," and not from any personal contact with or knowledge of Karlukov. Plaintiff's bare, conclusory allegation that Curran and Wathen had the requisite personal responsibility only "by and

through" other persons is insufficient to survive Defendants' Motion. *See, e.g., Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (affirming Rule 12(b)(6) dismissal of prison wardens for alleged constitutional violations because plaintiff failed to plead facts showing wardens had any personal responsibility for inmate's suicide).

Plaintiff's reliance (Response at 4) on *Farmer v. Brennan*, 511 U.S. 825, 840 (1994) is also misplaced. In reversing summary judgment against a prisoner and addressing whether a prison official had the requisite knowledge of a substantial risk of harm, the Court stated: "If the risk is obvious, so that a reasonable man would realize it, we might well infer that the defendant did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of." *Id*. at 842 (citations omitted). This statement is far from supporting Plaintiff's implication that if the alleged risk from a particular course or medical treatment (or lack thereof) is obvious enough, a factfinder can infer a prison official knew about it and disregarded it. Indeed, the Court ultimately held that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement *only if* he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847 (emphasis added). Thus, Plaintiff's citation to Complaint Paragraphs 14, 15, 17, 24, and 26 describing various aspects of Karlukov's mental health (Response at 4), provides no support for Plaintiff's position that he has sufficiently pleaded Curran's and Wathen's personal responsibility because none of those Paragraphs allege they had any actual knowledge of Karlukov's condition. *Farmer* does not stand for the proposition that a court can infer prison officials have actual personal knowledge of everything that occurs in the prison (*see Sanville*, 266 F.3d at 740), and Plaintiff

has not pleaded any plausible basis for this Court to even infer Curran and Wathen had the

personal knowledge, involvement or responsibility required to defeat Defendants' Motion.

**B.      Plaintiff Has Not Pleaded Curran's and Wathen's "Deliberate Indifference**."

Plaintiff's argument that he has sufficiently pleaded deliberate indifference to Karlukov's

serious medical need (Response at 4-7) is meritless.  To be deliberately indifferent, a defendant

must have had *actual knowledge* of the inmate's medical condition and must have intentionally

or recklessly disregarded a substantial risk to the inmate's health or safety.  *See,* Defendants'

Motion at 5.  Plaintiff fails to address this standard.  Though he cites 13 paragraphs of the

Complaint outlining Plaintiff's alleged mental health at the time of his incarceration (Response at

5-6), nothing in these paragraphs suggests Curran and Wathen had any *actual knowledge* of

Karlukov's condition.  Thus, Plaintiff again provides no basis for arguing that "Sheriff Curran

and Chief Wathen were personally aware of [Karlukov's mental health]."  Response at 6.

Plaintiff's attempt to fall back on Sheriff Curran and Chief Wathen as "policymakers"

who thus are responsible for the deprivation of Karlukov's constitutional rights, also fails.  First,

Plaintiff argues that he alleges Wathen is a "policymaker" for the Lake County Jail, but his

citations in support (paragraphs 6 and 7 of the Complaint) do not even mention Wathen.  Second,

though Curran is properly named as the "policymaker" for the Jail, it does not matter because (as

discussed above) Plaintiff has failed to properly plead that Curran had "actual knowledge" of

Karlukov at this time of his incarceration.  Similarly, Plaintiff's argument that placing Karlukov

"on suicide watch *with* the very items that were the basis for warranting suicide watch is akin to

criminal recklessness/assisted suicide" (Response at 6) is beside the point, since the Complaint

does not allege either Curran or Wathen themselves placed Karlukov on suicide watch or had

6

actual knowledge of the basis and background for that placement.  In sum, Plaintiff fails to explain why Curran's or Wathen's alleged status as "policymakers" defeats Defendants' Motion.

## II. COUNT IV'S *MONELL* CLAIM FAILS TO MEET PLEADING STANDARDS

Plaintiff acknowledges that he has attempted to plead a "widespread pattern or practice" type of *Monell* claim.  Response at 7.   As explained in Defendants' Motion at 9, to allege such a claim, the incidents forming the basis of the alleged widespread pattern or practice must be "similar" to the incident underlying the Complaint; Plaintiff is simply wrong when he states Defendants contend "Plaintiff need prove-up specific prior instances of *identical misconduct*." Response at 8 (emphasis added).  More significantly, Plaintiff ignores Defendants' argument that his Complaint fails to plausibly allege a widespread pattern or practice of incidents similar to Karlukov's in a meaningful time-period, and thus fails to plausibly plead his *Monell* claim. Motion at 8-10.  Instead, Plaintiff merely cites various paragraphs from his Complaint and asserts, without explanation, that he sufficiently has "alleged Defendants [*sic*] policy of ignoring inmates with serious medical conditions similar to Igor Karlukov's ..." Response at 8.  As explained in Defendants' Motion, however, these allegations do not meet the requisite standards. Similarly, Plaintiff's argument that he has sufficiently pleaded "deliberate indifference" for *Monell* purposes (Response at 9-10) fails for the same reasons he fails to plead deliberate indifference for purposes of individual liability – as discussed above, he does not plead that either Curran or Wathen had the requisite degree of actual knowledge.

With his reliance on *Phelan v Cook County*, 463 F.3d 773 (7th Cir. 2006), Plaintiff does shift his *Monell* argument to argue that *Monell* liability can be triggered by multiple actions taken against a single person.  *See,* Response at 8-9.  This argument is unpersuasive, because in *Phelan*

the court found plaintiff failed to weave together multiple employment discrimination actions taken against her by her fellow employees into a cognizable policy for purposes of *Monell* liability. 463 F.3d at 790. Here, Plaintiff's Complaint likewise fails to weave together the requisite allegations to put forth a cognizable *Monell* claim because the "incidents [alleged in Plaintiff's Complaint] do not amount to 'a widespread practice' that is 'permanent and well settled' so as to constitute an unconstitutional custom or practice about which [Sheriff Curran and Chief Wathen] [were] deliberately indifferent." *Estate of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005) (citations omitted).

Finally, Plaintiff's Response completely fails to address Defendants' arguments that (1) Lake County is not liable under *Monell* for the patterns or practices of the Jail, and (2) Chief Wathen is improperly named in the *Monell* claim. *See,* Motion at 7, fn. 5. Therefore, Plaintiff waives any argument and concedes the points. "The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession." *MCA WorldCom Network Services, Inc. v. Atlas Excavating, Inc.,* 2006 WL 3542332 at *3, (N.D. Ill., Dec. 6, 2006). *See, Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court. We apply that rule where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss" (citations omitted)); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466-67 (7th Cir. 2010) ("Failure to respond to an argument ... results in waiver" and "leaves us no choice but to accept U.S. Bank's assertions – supported as they are by pertinent legal authority – that the allegations in the Bontes' complaint do not entitle them to relief.").

**III. COUNT III'S INDEMNIFICATION CLAIM AGAINST LAKE COUNTY FAILS BECAUSE THERE IS CURRENTLY NO DEFENDANT TO INDEMNIFY**

Lake County cannot be held vicariously liable for indemnification absent an actionable claim against a person the County is required to indemnify. *See* Motion at 11. While Plaintiff correctly argues his indemnification claim is timely (Response at 11), he does not (and cannot) argue that if his claims against Sheriff Curran and Chief Wathen fail, a claim for indemnification based on those claims would also fail.

Plaintiff asserts Lake County is required to indemnify Plaintiff for the actions of the Wexford Defendants. Response at 11-12, 14. Defendants have explained why that is not true: Wexford was not an "employee." Motion at 12. Plaintiff's three counter-arguments are each wrong: (1) this Court *can* refer to the contract between the Jail and Wexford in the 12(b)(6) context, as explained in the Motion at 12, fn. 8; (2) whether a private physician under contract to provide medical care to inmates acts "under color of law" is irrelevant to the different question of whether that same physician is an "employee" for purposes of indemnification[1]; and (3) the bewildering citation to *Richardson* is inapposite, since that case had nothing to do with whether a County has an obligation to indemnify a non-employee independent contractor.[2] In short, Plaintiff has neither pleaded any facts, made any arguments, nor cited any case law to support a claim that Lake County would have any statutory indemnification obligations to Wexford.

---

[1] *Cf., Coles v. City of Chicago,* 361 F. Supp. 2d 740, 746 (N.D. Ill. 2005) ("color of law" and "scope of employment" questions are different and "should not be confused").

[2] *Richardson* concerned a completely unrelated question of whether the City of Chicago had an obligation under the Collective Bargaining Agreement with the police union to indemnify a police officer (who was acting within the scope of employment) for the payment of attorney's fees which were based solely on an award of punitive damages against the officer. *Richardson v. City of Chicago,* 2013 WL 2451107 (N.D. Ill., June 5, 2013).

More substantively, Plaintiff expends three pages arguing that a claim against "unknown John Doe Sheriff Officers and Supervisors" is not barred by the statute of limitations. Response at 12-14.[3] Such argument is premature, at least until Plaintiff tries to amend his Complaint to add a new, named defendant, at which point the issue would be ripe for discussion. But several observations are timely now. First, none of the cases cited by Plaintiff stand for the proposition that a plaintiff can extend the statute of limitations by waiting until the last day to file a lawsuit naming "John Doe" defendants, then do nothing more for several more months before even seeking discovery to learn the identities of any potential John Doe. Indeed, in two of the cases Plaintiff cites for extending the statute of limitations, the *pro se* plaintiffs named "John Doe" defendants well within the statute, and their original complaints tried to identify the "John Does" by describing the specific acts they allegedly took against plaintiffs; plaintiffs then repeatedly sought discovery to learn the John Does' names before the statute of limitations expired; however, because the municipal defendants were unresponsive to those discovery efforts, plaintiffs did not learn the John Does' names until after the statute had run, at which point the courts allowed amendment of the complaint to "relate back" to the original complaint. *White v. City of Chicago,* 2016 WL 4270152 at **15-22 (N.D. Ill., Aug. 15, 2016); *Solivan v. Dart,* 897 F. Supp. 2d 694, 701 (N.D. Ill. 2012).[4] As this Court knows, that is not what has happened in this case.

---

[3] Plaintiff was responding to Defendants' short footnote pointing out that claims against such "unknown" and as-of-yet named defendants would be time-barred. *See,* Motion at 2, fn. 1.

[4] *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), the case upon which *White, Solivan* and Plaintiff here rely, was not a "John Doe" case at all, but rather one where plaintiff timely but mistakenly sued a corporate defendant under the wrong name, then corrected the mistake after the statute expired.

Second, while the legal discussions in *White* and *Solivan* appear helpful to Plaintiff, it is important to note that those cases do not set dispositive law; indeed, *White* acknowledges that several district courts have not applied *Krupski* to "John Doe" cases and that the Seventh Circuit has not spoken definitively on if and how *Krupski* might apply to "John Doe" situations like Plaintiff's. *White,* 2016 WL 4270152 at *17.

Last, as Plaintiff recognizes, for him to save his otherwise-untimely claims against any defendant-to-be-named-later, he will have to allege and prove "extraordinary circumstances" and "due diligence" facts to show "relation back" or "equitable tolling" principles apply. Response at 12. So far, however, Plaintiff's efforts are dismal. For instance, Plaintiff apparently waited until April 2016 to be named Administrator of the Estate, though the Complaint alleges (at ¶ 24) that Karlukov's attorney was in touch with Karlukov's family even before Karlukov's death; thus, it is difficult to imagine why it took two years to name an Administrator and bring a lawsuit. Additionally, the nearly six-month delay between filing this lawsuit and serving Wexford speaks volumes about Plaintiff's lack of "due diligence" regarding this case.

Plaintiff here not only seeks to *extend* the statute of limitations, he seeks to *eviscerate* it. While his efforts will not play out until Plaintiff actually files an amended complaint naming a current John Doe, this Court should already be wary. As it stands now, however, there is no Defendant to whom Lake County owes indemnification, and thus Count III should be dismissed.

## CONCLUSION

For the reasons set forth in their opening brief, and for the reasons above, the Lake County Defendants respectfully request this Honorable Court dismiss Counts I, III, and IV of Plaintiff's Amended Complaint.


Dated: September 29, 2016                    RESPECTFULLY SUBMITTED,


                                             /s/Amy P. Engerman
                                             AMY P. ENGERMAN, Attorney No. 06277932
                                             *One of the Attorneys for Defendants Mark Curran,*
                                             *David Wathen, Lake County Sheriff's Office, and*
                                             *County of Lake*

James G. Sotos
Jeffrey N. Given
Amy P. Engerman
Caroline P. Golden
THE SOTOS LAW FIRM, P.C.
550 East Devon, Suite 150
Itasca, Illinois 60143
Tel: (630) 735-3300
Fax: (630) 773-0980
aengerman@jsotoslaw.com

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that on Thursday, September 29, 2016, I electronically filed the foregoing **Lake County Defendants' Reply to Plaintiff's Response to Motion to Dismiss Counts I, III, and IV of Plaintiff's Amended Complaint** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attached Service List.

/s/Amy P. Engerman
AMY P. ENGERMAN, Atty No. 06277932

**<u>SERVICE LIST</u>**

*Trofymenko v. County of Lake, et al.*
Case No.: 16 CV 4405

***Attorney for Plaintiff***
Kevin O'Connor
O'Connor Law Firm, Ltd.
19 S. LaSalle, Suite 1400
Chicago, Illinois 60603
Tel: (312) 906-7609
Fax: (312) 906-7615
koconnor@koconnorlaw.com

***Attorneys for Wexford Health Sources, Inc.***
Matthew H. Weller
Ronald E. Neroda
Cassiday Schade LLP
20 N. Wacker Drive, Suite 1000
Chicago, Illinois 60606
Tel: (312) 641-3100
mweller@cassiday.com
rneroda@cassiday.com