040999/01245/MHW/REN

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

STANISLAV TROFYMENKO, as
Independent Administrator of the Estate of
IGOR KARLUKOV, Deceased,

            Plaintiff,

v.

COUNTY OF LAKE, OFFICE OF THE
LAKE COUNTY SHERIFF, SHERIFF MARK
CURRAN, CHIEF DAVID WATHEN, JOHN
DOE LAKE COUNTY SHERIFF OFFICERS
AND SUPERVISORS, JOHN DOE
EMPLOYEES, and WEXFORD HEALTH
SOURCES, INC.,

            Defendants.

Case Number  16-cv-4405

Honorable Judge Andrea R. Wood

## WEXFORD HEALTH SOURCES, INC.'S ANSWER
## TO PLAINTIFF'S FIRST AMENDED COMPLAINT AT LAW

Defendant, WEXFORD HEALTH SOURCES, INC., by and through its attorneys, Matthew H. Weller and Ronald E. Neroda of CASSIDAY SCHADE LLP, in answer to plaintiff, STANISLAV TROFYMENKO as Independent Administrator of the Estate of IGOR KARLUKOV, Deceased's First Amended Complaint at Law, states as follows:

### JURISDICTION

1.      The jurisdiction of the court is invoked pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Judicial Code, 28 U.S.C. § 1331, § 1343, and (b); the Constitution of the United States; and this Court's supplementary jurisdiction powers pursuant to 28 U.S.C. § 1367.

**ANSWER:**    **Admit.**

## PARTIES

2.      PLAINTIFF STANSILAV TROFYMENKO, as Independent Administrator of the Estate of IGOR KARLUKOV, is a resident of the State of Colorado and of the United States, and has been appointed as Independent Administrator of the Estate of IGOR KARLUKOV by the Circuit Court of Cook County, Illinois. A copy of the Order and Letters of Office are attached hereto as Exhibit 1.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2.**

3.      PLAINTIFF STANSILAV TROFYMENKO, as Independent Administrator of the Estate of IGOR KARLUKOV, deceased, has standing to bring all Counts and Causes of Action stated herein.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.**

4.      Prior to his arrest, IGOR KARLUKOV was a resident of the State of Illinois and the County of Cook.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4.**

5.      Defendant, LAKE COUNTY, is a governmental entity within the State of Illinois which funds and operates the Lake County Jail and is a necessary party and is ultimately responsible for Judgment or Settlement.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5.**

6.      Defendant, SHERIFF MARK CURRAN (hereinafter referred to as "CURRAN") was at all times relevant, the duly elected sheriff of Lake County and the chief administrator of the LAKE COUNTY JAIL. At all times relevant, he was acting under color of law and in the course and scope of his employment as the agent, servant and an official policy maker for the

Defendant, LAKE COUNTY on issues relating to care of prisoners in LAKE COUNTY JAIL and the policies, procedures and customs, as well as the acts and omissions, challenged by this suit and as the County's chief law enforcement officer, Defendant CURRAN was the commanding officer of all Lake County sheriff's deputies, correctional officers, and jail employees and he was responsible for their training, supervision and conduct. He is sued in his official and individual capacities.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6.**

7.     Defendants, LAKE COUNTY/SHERIFF MARK CURRAN are responsible for the establishment and implementation of the policies, procedures, practices, and customs, as well as the acts and omissions charged in this Complaint.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7.**

8.     Defendant, LAKE COUNTY is also responsible for ensuring that all of its facilities, including the Lake County Jail, are in compliance with federal and state law, department or agency policies, rules and regulations, and related standards of care.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8.**

9.     The OFFICE OF THE LAKE COUNTY SHERIFF (hereinafter referred to as "LAKE COUNTY SHERIFF") is a duly incorporated municipal corporation in the State of Illinois and at all times relevant, the Defendant, the LAKE COUNTY SHERIFF, owned, operated and maintained the Lake County Jail for purposes of housing inmates and pretrial detainees, and, as such, was acting under the color of State Law.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9.**

10. JOHN DOE OFFICERS AND SUPERVISORS were other correctional officers and supervisors at the Lake County Jail during the events complained of and contributed to the death of IGOR KARLUKOV through their actions or omissions. JOHN DOE OFFICERS and SUPERVISORS ARE SUED IN THEIR INDIVIDUAL CAPACITIES. Plaintiff will ask leave of the Court to amend this Complaint to insert these Defendants' true names and capacity when same have been ascertained and will further ask leave to join said Defendants in these proceedings.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10.**

11. WEXFORD HEATLH [sic] SOURCES, INC. (hereinafter "WEXFORD"), with its home offices in Pennsylvania, is a Florida corporation, which at all times material to this Complaint had a contract with Lake County Jail to provide medical and mental health care to those detained at Lake County Jail. Defendant, WEXFORD, was responsible for providing all medical services to detainees, including but not limited to assessment of need for services, provision of care and treatment services for all healthcare needs and follow up; and for hiring, training, supervision and conduct of all healthcare providers at the jail. At all times relevant, WEXFORD, by and through its employees and agents, was acting under color of law and its agents and employees were acting in the course and scope of their employment

**ANSWER:    Defendant admits only that Wexford has its home offices in Pennsylvania, is a Florida corporation, and at certain times has had a contract to provide certain health care to inmates detained at Lake County Jail. Defendant denies that the Plaintiff has accurately alleged the health care services, which Wexford was contracted with to provide. Defendant denies that Wexford was responsible for providing all medical services to detainees, including but not limited to assessment of need for services, provision of care and treatment services for all healthcare needs and follow up; and for hiring, training, supervision and conduct of all healthcare providers at the jail, and denies any remaining allegations contained in paragraph 11.**

4

12.     JOHN DOE EMPLOYEES were employees of Lake County through the WEXFORD HEALTH SOURCES, INC. during the events complained of and contributed to the death of IGOR KARLUKOV through their actions or omissions. JOHN DOE EMPLOYEES are sued in their individual capacities. Plaintiff will ask leave of the Court to amend this Complaint to insert these Defendants' true names and capacity when same have been ascertained and will further ask leave to join said Defendants in these proceedings.

**ANSWER:     Defendant denies that any of the unnamed Defendants "were employees of Lake County through [Wexford]." Defendant denies that Wexford's employees contributed to the death of IGOR KARLUKOV through their actions or omissions, and denies that the Plaintiff has sued any Wexford in their individual capacities. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations that the Plaintiff will ask leave of the Court to amend this Complaint to insert unnamed Defendants' true names and capacities when same have been ascertained and will further ask leave to join said Defendants in these proceedings.**

### GENERAL ALLEGATIONS and FACTUAL SUMMARY

13.     On February 10, 2014, IGOR KARLUKOV, decedent was arrested by the Mundelein Police Department for home invasion, Domestic Battery, violating an order of protection and aggravated stalking against his ex girlfriend, Norsulu Melnichuk.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.**

14.      After his arrest, he relayed to Investigator Bush #223 and Investigator Hergott, how he had met Norsulu (aka Consulu) two years ago and the woman that was calling herself Norsulu at this present time was not the same as the one he met two years ago. She was a fortune teller or shaman and had magical powers and that her soul was an old soul but it changes forms and the current soul was a bad soul. He stated that she had taken everything away from him and was taking his soul away. He said that at present time, he had only 35% of his soul left and that he had to stop her from taking his soul completely. He became aware at midnight on 2/10/14 that Norsulu was in the process of stealing his soul.

5

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.**

15.    IGOR KARLUKOV continued to talk in circles to investigators and brought up the magical powers he knew Norsulu had. He forced his way into the apartment and as Norsulu began to lose her energy, he brought her down to the floor where he placed his arms around her to transfer his energy into her to get her bad soul out. He indicated to investigators that he must accomplish different tasks to stop her. He had to tell her three things. First that he told her 13 times that he was removing his "Bogdon Son". His Bogdon son was the son Norsulu told him that he had in the heavens. He then told her three times that he was preventing her from stealing his soul. As he was holding her, he reports that she lost her energy and lost her soul. He told her three to five times, "I'm destroying you" .

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15.**

16.    IGOR KARLUKOV was stopped in the middle of this "ritual" by Norsulu's roommate. He left the apartment and knew he was doomed because he did not destroy her soul and that in a few days his soul would be gone and he would become a bio-robot.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16.**

17.    On February 11, 2014, Investigator Bush #223, transported IGOR KARLUKOV to the Lake County Jail for bond court hearing. Karlukov made statements that Norsulu used to be the wife of a god and is a god herself.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17.**

18.    IGOR KARLUKOV's medical intake was completed by Nurse Leticia. At that time, IGOR KARLUKOV indicated no history of mental illness.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18.**

19.    On February 12, 2014, IGOR KARLUKOV made statements of being fearful about being in jail. The officers observations were that KARLUKOV's behavior was somewhat strange. At that time, the officer felt it necessary to house him in 3sW for monitoring for the possibility of mental health issues.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19.**

20.    On February 14, 2014 he was moved to 3sW cell 44.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20.**

21.    On February 27, 2014, IGOR KARLUKOV reported on an inmate request form that he was depressed.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21.**

22.    On February 28, 2014, IGOR KARLUKOV reported to Nurse Keller that he was very depressed and a referral was made to the mental health staff.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22.**

23.    On March 3, 2014, a sick call referred for depression. No mental health complaints but requested to take anti- depressant for one week. He was told it took longer than that to begin working and changed his mind on wanting the anti-depressant.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23.**

24.    On March 25, 2014, IGOR KARLUKOV's attorney called and stated that he received a call from Mr. Karlukov's family and they said he stated, "If he kills himself, it will

7

prevent the bad spirits from harming him". IGOR KARLUKOV was then put on suicide watch at

2110.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24.**

25.     On March 26, 2014, SW Katie took Mr. Karlukov off of watch because he told

her he had a bad day and was fine now.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25.**

26.     On March 28, 2014, IGOR KARLUKOV was sent to Vista East and received 5

stitches on his neck and prescription ibuprofen for two weeks. Inmate was placed on "razor

restriction" by SW Jen.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26.**

27.     On April 7, 2014, Dr. Mizuno removed the stitches from his neck.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27.**

28.     On April 14, 2014 SW Katie found red irritation on IGOR KARLUKOV's neck.

Scraps of the torn laundry bag were found in his cell. He was placed on suicide watch by SW

Katie at that time.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28.**

29.     On April 15, 2014, SW Jen B followed up with IGOR KARLUKOV. He denied

having the torn up laundry bag even when it was found in his cell and denied hurting himself. He

got angry when denied a razor and was kept on suicide watch.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29.**

30.     On April 16, 2014, SW Katie followed up with IGOR KARLUKOV and he was found to still be angry regarding the razor. Watch was continued and the razor was denied.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30.**

31.     On April 17, 2014, a Psychiatrist saw IGOR KARLUKOV, he was asked about the cut and other redness on the neck. The doctor recommended referral to the internist for rash on beard area and will recommend discontinued suicide watch after 24 hours.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31.**

32.     On April 18, 2014 IGOR KARLUKOV, fashioned a piece of metal and the mesh laundry bag to a heating vent and hung himself to death.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32.**

<u>**COUNT I**</u>
<u>**VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENT RIGHTS**</u>
<u>**BREACH OF DUTY OF CARE AND DELIBERATE INDIFFERENCE TO**</u>
<u>**SERIOUS MEDICAL NEEDS**</u>
<u>**AGAINST DEFENDANTS COUNTY OF LAKE, OFFICE OF THE LAKE**</u>
<u>**COUNTY SHERIFF, SHERIFF MARK CURRAN, CHIEF DAVID WATHEN**</u>
<u>**AND JOHN DOE LAKE COUNTY SHERIFF OFFICERS**</u>

**The allegations and claims contained in Count I are not directed to this answering Defendant.  To the extent any of the allegations contained in Count I are deemed directed against this answering Defendant, Defendant denies each and every allegation contained therein.**

<u>**COUNT II**</u>
<u>**BREACH OF DUTY OF CARE AND DELIBERATE INDIFFERENCE TO**</u>
<u>**SERIOUS MEDICAL NEEDS**</u>
<u>**AGAINST DEFENDANTS WEXFORD HEALTH SOURCES, INC.**</u>
<u>**AND JOHN DOE EMPLOYEES**</u>

45.     Plaintiff restates and re-alleges by reference paragraphs 1 through 32 as though fully set forth herein as Paragraph 45 of this Count II of this Complaint.

**ANSWER:    To the extent that the Plaintiff intends to restate and re-allege by reference the allegations set forth in paragraphs 1 through 32 as though fully set forth in paragraph 45, Defendant hereby restates and incorporates by reference its responses to paragraphs 1 – 32 as though fully set forth in paragraph 45.**

46.    At all relevant times, including February 11, 2014 and including April 18, 2014, Defendant WEXFORD HEALTH SOURCES, INC. (hereinafter referred to as "WEXFORD") was engaged in the business, for profit, of providing medical and psychological services to detainees and inmates of the LAKE COUNTY JAIL, including initial and continuing suicide risk evaluations, and specifically had contracted with Lake County or the Lake County Sheriff to provide such services in the confines of the jail proper, and as such was therefore acting at all times under color of State Law.

**ANSWER:    Defendant admits only that it was, at certain times, engaged in the business of providing certain services to detainees and inmates of the Lake County Jail, and had a contract to provide such certain services. Defendant denies that the Plaintiff has accurately alleged the business of this Defendant, the services provided by this Defendant relative to inmates of the Lake County Jail, or the contractual terms relative to Lake County Jail, and denies any remaining allegations contained in paragraph 46.**

47.    At all times relevant, JOHN DOE EMPLOYEES were agents and employees of WEXFORD.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47.**

48.    From February 11, 2014 until and including April 18, 2014, Plaintiff's decedent, IGOR KARLUKOV was a pretrial detainee in the care, custody and control of the LAKE COUNTY JAIL, where he came under the medical and psychological care of the DEFENDANT WEXFORD and its JOHN DOE EMPLOYEES.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48.**

49.     From February 11, 2014 up to and including April 18, 2014, IGOR KARLUKOV as a high suicide risk, a fact which Defendants, WEXFORD and JOHN DOE EMPLOYEES knew and documented.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49.**

50.     From February 11, 2014 up to and including April 18, 2014, and at all times material, while plaintiff's decedent, IGOR KARLUKOV was under its care, custody and control, the defendants, JOHN DOE EMPLOYEES, individually and as an employee or agent of WEXFORD, and WEXFORD, were negligent and committed one or more of the following acts of utter indifference and/or conscious disregard:

(a)     Failed to use the appropriate standard of Medical care to assess, evaluate and make valid safe recommendations for IGOR KARLUKOV suicide risk.

(b)     WEXFORD, Individually had in place policy or procedures which were not calculated to truly determine whether detainees or inmates at the Lake County Jail were at high risk for suicide and specifically IGOR KARLUKOV;

(c)     WEXFORD, Individually, did not train its personnel, employees and agents to properly, accurately or adequately be able to make valid and safe recommendations for the proper care and evaluation of inmates and detainees who were suicide risks and specifically, IGOR KARLUKOV;

(d)     JOHN DOE EMPLOYEES, Individually allowed to exist or failed to correct or remedy the failures inherent in WEXFORD's policies, procedures and personnel.

(e)     JOHN DOE EMPLOYEES, Individually Failed or intentionally deprived IGOR KARLUKOV housing in a hospital or medical ward when it knew he needed to be in a closely monitored medical environment.

(f)     JOHN DOE EMPLOYEES, Individually, conveyed to the Sheriff's department that IGOR KARLUKOV would be removed from the suicide watch implemented previously, thereby diminishing the severity of his condition and the level of his suicide risk.

**ANSWER:   Defendant denies the allegations contained in paragraph 50, including sub-paragraphs (a) – (f), inclusively.**

51.     As a direct and proximate result of one or more of the foregoing wrongful acts and omissions, Plaintiff's decedent, IGOR KARLUKOV was deprived of rights, privileges and immunities guaranteed by his Eighth and Fourteenth Amendments to the United States Constitution, namely he hung himself in his jail cell on April 18, 2014.

**ANSWER:   Defendant denies the allegations contained in paragraph 51.**

52.     Defendants knew or should have known that decedent, IGOR KARLUKOV, was a suicide risk and failed take the necessary precautions to prevent his suicide. By failing to act in the face of obvious risk. The Defendants failure to take adequate precautions to prevent, IGOR KARLUKOV's suicide was the direct and proximate cause of injury and death to IGOR KARLUKOV.

**ANSWER:   Defendant denies the allegations contained in paragraph 52.**

53.     IGOR KARLUKOV, endured conscious pain and suffering from the time he hung himself until the time of death.

**ANSWER:   Defendant denies the allegations contained in paragraph 53.**

54.     As next of kin, IGOR KARLUKOV's heirs have grief and sorry and have lost and will continue to lose, pecuniary support, consortium, society, companionship as well as the love and affection of their cherished Son and brother.

**ANSWER:   Defendant denies the allegations contained in paragraph 54.**

55.     Plaintiff's decedent leaves behind a Mother, Svetlana Karlukova, father, Leonid Karlukov and a sister, Elena Zavtur in the Ukraine.

**ANSWER:   Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55.**

56.     Plaintiff is the duly appointed administrator of the estate of IGOR KARLUKOV, deceased and brings this action pursuant to 42 U.S.C. §1983, for the benefit of decedent's mother, father and sister, and/or any other person entitled to claim damages under state or federal law.

**ANSWER:    Defendant denies that the Plaintiff is entitled to claim any damages in this case. Further answering, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 56.**

57.     An Affidavit of attorney is attached hereto as **Exhibit "A"** and an Certificate of Merit is attached hereto as **Exhibit "B"** which will attest to the reasonable and meritorious cause of action for medical negligence in this matter.

**ANSWER:    Defendant admits only that the Plaintiff has attached an Affidavit of attorney as Exhibit "A," and a Certificate of Merit as Exhibit "B." Defendant denies that the Affidavit and Certificate of Merit supports any claim against Wexford in this case, or adequately comports with Section 622. Defendant denies any remaining allegations contained in paragraph 57.**

WHEREFORE, Defendant WEXFORD HEALTH SOURCES, INC., prays that this Honorable Court dismiss Plaintiff's First Amended Complaint with prejudice, and order any further relief as this Honorable Court deems just and equitable.

## COUNT III
### 745 ILCS 10/9-102 Indemnification Claim Against the COUNTY OF LAKE

**The allegations and claims contained in Count III are not directed to this answering Defendant.  To the extent any of the allegations contained in Count III are deemed directed against this answering Defendant, Defendant denies each and every allegation contained therein.**

## COUNT IV
### Violation of 42. U.S.C. §1983 - Monell claim against Defendant COUNTY OF LAKE, SHERIFF MARK CURRAN and CHIEF DAVID WATHEN

**The allegations and claims contained in Count IV are not directed to this answering Defendant.  To the extent any of the allegations contained in Count IV are deemed directed**

against this answering Defendant, Defendant denies each and every allegation contained therein.

## JURY DEMAND

Defendant demands a trial by jury on all issues herein triable.

## WEXFORD HEALTH SOURCES, INC.'S AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT AT LAW

Defendant WEXFORD HEALTH SOURCES, INC., by and through its attorneys, CASSIDAY SCHADE LLP, for its Affirmative Defenses to plaintiff, STANISLAV TROFYMENKO as Independent Administrator of the Estate of IGOR KARLUKOV, Deceased's First Amended Complaint at Law, hereby states as follows:

## FIRST AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM

1.     Defendant WEXFORD HEALTH SOURCES, INC., affirmatively states that the Plaintiff's First Amended Complaint fails to state a claim upon which relief could be granted pursuant to 42 U.S.C. §1983.

2.     To assert a claim for cruel and unusual punishment under the Eighth Amendment of the Constitution, the plaintiff must show: (1) deliberate indifference to (2) serious medical needs of a prisoner. *Estelle v. Gamble* 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 1976.

3.     A private corporation acting under the color of state law may be liable under §1983 if an official policy or custom of the corporation resulted in the alleged constitutional deprivation. *Monell v. Dep't of Social Svcs. of City of New York*, 436 U.S. 658, 690–91 (1978).

4.     To state a viable § 1983 claim against a private corporation acting under the color of state law, a plaintiff must prove that his injury was caused by: (1) an express policy; (2) a widespread practice constituting a "custom or usage"; or (3) the act of a person with final policymaking authority at the corporation. *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008). Plaintiff's allegations regarding the policies and customs of Defendant WEXFORD

HEALTH SOURCES, INC., do not rise to the level of a constitutional violation under §1983 and, therefore, cannot establish that this Defendant was deliberately indifferent.

## SECOND AFFIRMATIVE DEFENSE –
## DEFENDANT ACTED IN GOOD FAITH/IMMUNITY

1. At all times relevant herein, Defendant acted in good faith in the performance of its official duties and without violating Decedent's statutory or constitutional rights of which a reasonable person would have known. Defendant is therefore protected from suit by the doctrine of qualified immunity.

## THIRD AFFIRMATIVE DEFENSE –
## FAILURE TO FOLLOW MEDICAL/MENTAL HEALTH ADVICE AND
## EXERCISE REASONABLE CARE

1. The sole proximate cause of the injuries and damages alleged by the Plaintiff was the Decedent's failure to exercise reasonable care for his own wellbeing.

2. The Decedent had a duty to follow reasonable medical/mental health advice, recommendations, or procedures, provided to him by the staff at Lake County Jail for the treatment and management of the Decedent's claimed mental health condition(s).

3. The Decedent failed to exercise reasonable care and follow reasonable medical/mental health advice, recommendations, or procedures, in one or more of the following respects, which were the sole proximate cause of the injuries and damages claimed by the Plaintiff in this case:

    (a) Failed to follow reasonable medical and/or mental health advice and recommendations;

    (b) Failed be truthful to medical/mental health staff and accurately state his symptoms, conditions, and behavior to the Defendant;

    (c) Failed to exercise reasonable care for his own safety and wellbeing;

    (d) Intentionally caused harm to himself; and,

(e)      Was otherwise careless or caused harm to himself.

4.      The actions of the Decedent were the proximate cause of any injuries which are claimed in the Plaintiff's First Amended Complaint at Law.

**FOURTH AFFIRMATIVE DEFENSE – CONTRIBUTORY NEGLIGENCE**

1.      That at all relevant times, the Decedent had a duty to exercise reasonable care for his own safety.

2.      Notwithstanding his duty, Decedent was contributorily negligent in one or more of the following respects:

(a)      Failed to follow reasonable medical and/or mental health advice and recommendations;

(b)      Failed be truthful to medical/mental health staff and accurately state his symptoms, conditions, and behavior to the Defendant;

(c)      Failed to exercise reasonable care for his own safety and wellbeing;

(d)      Intentionally caused harm to himself; and,

(e)      Was otherwise careless and negligent.

3.      The actions of the Decedent were the sole proximate cause of any injuries which are claimed in the Plaintiff's First Amended Complaint at Law.

4.      Additionally, and in the alternative, if the actions of the Decedent were more than 50% of the proximate cause of the claimed occurrence, pursuant to Illinois Statute 735 ILCS 5/2-1116, Plaintiff's recovery is barred; if the Decedent's actions are found to be 50% or less than the cause of the occurrence, any recovery awarded to Plaintiff must be reduced by the Decedent's proportionate share of liability and fault pursuant to Illinois Statute 735 ILCS 5/2-1116.

16

WHEREFORE, defendant WEXFORD HEALTH SOURCES, INC., prays for dismissal of the Plaintiff's First Amended Complaint with prejudice and judgment in favor of the Defendant and against Plaintiff, with costs assessed to Plaintiff. In the alternative, any award granted the Plaintiff shall be reduced by the Decedent's proportionate share of liability and fault.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: s/Ronald E. Neroda
  One of the Attorneys for Defendant,
  WEXFORD HEALTH SOURCES, INC.

Matthew H. Weller | ARDC 6278685
Ronald E. Neroda | ARDC 6297286
CASSIDAY SCHADE LLP
20 North Wacker Drive, Suite 1000
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 (Fax)
mweller@cassiday.com
rneroda@cassiday.com

### CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2016, I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

<u>s/Ronald E. Neroda</u>

8359812